**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Titled Action Pending In The District of Maryland, Southern Division**
**Under Case Number PJM 08 CV 0921**

| | |
|---|---|
| BEYOND SYSTEMS, INC. | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| WORLD AVENUE USA, LLC, | ) |
| WORLD AVENUE HOLDINGS, | ) |
| LLC, and NIUNIU JI, | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

**NON-PARTY THEUSEFUL, LLC'S MOTION TO QUASH PLAINTIFF BEYOND**
**SYSTEMS, INC.'S SUBPOENA *DUCES TECUM* AND FOR ENTRY OF PROTECTIVE**
**ORDER AND INCORPORATED MEMORANDUM OF LAW**

Non-party, THEUSEFUL, LLC ("TheUseful"), pursuant to Fed. R. Civ. P. 26(c) and 45,

hereby files its Motion to Quash the Subpoena *Duces Tecum* served by Plaintiff, BEYOND

SYSTEMS, INC. ("BSI") And For Entry of Protective Order, and in support thereof, states:

**I.      INTRODUCTION**

The subpoena now before the Court is an attempt by a litigant to circumvent five clear

and unambiguous Court Orders entered and one ruling  by the Court in the underlying Maryland

action that carefully circumscribe the scope of discovery in that case.  On the very day that the

Court entered the fourth of those Orders and made that sixth ruling, BSI served the subpoena to

evade the discovery limitations that the Court had placed on discovery in that action.  The

1

resulting Subpoena Duces Tecum ("Subpoena")[1] that BSI served on TheUseful is oppressive, unduly burdensome and contains document requests that are overbroad and fail to describe the documents requested with reasonable particularity. The Subpoena requests TheUseful to produce, pursuant to Fed. R. Civ. P. 30(b)(6), its corporate representative with the most knowledge of a myriad of topics tied to more than one hundred document requests (disingenuously labeled as only three requests). These topics are not relevant to any pending claim by BSI in the underlying case. BSI's Subpoena purports to depose TheUseful's representative with the most knowledge on the "World Avenue Companies", which it defines as thirty-five entities, *only two of which* are named defendants in the underlying action.

The Subpoena contains *thirty-two (32)* definitions spanning six (6) pages, requests that TheUseful produce its representative with the most knowledge on *fifty (50)* distinct subject matters and contemporaneously seeks the production of what are claimed as three (3) categories of documents, but are really more than one hundred, all requiring production of documents for each of those fifty (50) distinct subject matters.

On its face, the scope of the Subpoena clearly violates Rule 26's requirement that discovery be "reasonably calculated to lead to the discovery of admissible evidence." On its face, and as further explained below, the Subpoena violates the letter and spirit of four Court Orders entered in the Maryland action. It is incumbent upon BSI to tailor its discovery requests to existing Orders of Court and the pending claims and defenses, but it did not do so. Accordingly, the Court should enter an Order quashing the Subpoena and entering a Protective Order.

---

[1] A copy of the Subpoena Duces Tecum is attached as **Exhibit 1.**

2

## II.    STATEMENT OF FACTS

### A.    The Maryland Action.

This is an action to quash a Subpoena issued in connection with an action styled *Beyond Systems, Inc. v. World Avenue USA, LLC, World Avenue Holdings, LLC, and Niuniu Ji*, pending in the District of Maryland ("Maryland Action").  The Maryland Action is a case brought by BSI, a serial spam litigator masquerading as an internet service provider for $105 million in supposed "damages" that it inflicted upon itself.  BSI posits itself as a victim of at least 70,000 unsolicited commercial e-mails ("UCE"), seeks to collect a statutory damage award for each separate e-mail and asserts that it did nothing to bring such UCE upon itself.  The discovery in the Maryland Action has demonstrated that BSI is not an internet service provider, that it "seeded" the internet with e-mail addresses hoping to attract commercial email, and that Joseph Wagner, the brother of BSI's owner, who operates a similar litigation mill in California named "Hypertouch", is the person who actually collected and forwarded to Maryland all the e-mails on which BSI filed suit in Maryland.

BSI alleges that the Defendants in the Maryland Action, World Avenue USA, LLC ("WAUSA") and World Avenue Holdings, LLC ("Holdings") -- both Florida businesses -- initiated, conspired in the initiation, or assisted in the transmission of at least 70,000 commercial electronic mail messages   (the "E-Mails At Issue") to BSI's alleged server(s) in Maryland between July 20, 2004, and September 3, 2005, and continuing to date.  *See* Amended Complaint, ¶ 67, a copy of which is attached as **Exhibit "2."**  BSI seeks relief under the Maryland Commercial Electronic Mail Act, Section 14-3001 *et seq*., which governs e-mails

3

received in Maryland, and the Florida Electronic Mail Communications Act, Section 668.60 *et seq.*, Fla. Stat., which governs e-mails sent from Florida.  TheUseful is an internet marketing company whose sister company is WAUSA, and is -- like WAUSA -- a subsidiary of Holdings. Critical to the Court's understanding of why this Subpoena is so abusive, and as will be further explained below, is that what is at issue in this case is the 70,000 emails and 41 internet domains linked to them, and not other domains, promotions, emails or the plethora of ancillary topics and subjects BSI seeks to root about in - particularly since it has been told by the Maryland Court that it is not allowed to do what it is trying to do with this Subpoena.

  **B.**  **The Maryland Court's Limitation Of Discovery.**

  The Maryland Court has limited BSI's attempts at free-ranging discovery in the Maryland Action to the 41 internet domain names that BSI has alleged are found in the E-Mails At Issue. The Court has applied this limitation four times to subpoenas issued to non-parties.

  **1.**  **The April 16, 2010 Order.**

  On April 16, 2010, the Court entered an Order granting in part WAUSA's Motion to Quash Plaintiff BSI's Subpoena Issued to a Non-Party, DNS Made Easy.  *See* **Exhibit 3**.

> Plaintiff [BSI] seeks information regarding approximately 163 domain names. Defendant [WAUSA] points out, however, that pursuant to Paul A. Wagner's [BSI's President] declaration under oath, only approximately 41 of these domain names have appeared in the "e-mails at issue."  While Defendant cannot suggest an interest in the balance of the domain names or in any burden of production, it is equally true that Plaintiff has not demonstrated an entitlement to the additional names under the rules of discovery.  It is apparent that far more entities are identified in Plaintiff's subpoena for documents, than those attested to in Mr. Wagner's declaration as being related to this lawsuit.  Plaintiff shall be limited to the discovery of those items set forth in the declaration until some other good faith basis has been established.  Any effort by Plaintiff to go beyond the

4

parameters of good faith discovery may run afoul of the principles of Fed. R. Civ. P. 11.

### 2.     The June 23, 2010 Order.

Notwithstanding the unambiguous language of the April 16th Order (Exhibit 3), BSI asked the Court to rule on its Motion to Compel DNS Made Easy to Respond Fully To Subpoena For Document Production, and as a result, the Court issued a June 23, 2010 Order.  *See* **Exhibit 4**.  The Order states:

> In large measure the issues resolved in Plaintiff's Motion have been addressed under this Court's Order of April 16, 2010 [Exhibit 3 above], resolving Defendant World Avenue USA, LLC's Motion to Quash Plaintiff BSI's Subpoena Issued to Non-Party DNSMADEEASY found at Docket Item No. 159.  For purposes of clarity, the Court herein **reaffirms** the rulings made in that matter.  Non-party DNSMADEEASY.COM, LLC ("DNS") will be required to produce responsive documents limited to those entities identified in the Amended Complaint and specifically set forth in Paul A. Wagner's Declaration Under Oath as being directly related to World Avenue USA, LLC, its former or current employees, officers, agents, and representatives.

### 3.     The September 9, 2010 Order.

Not satisfied with being rejected twice in Court Orders, BSI moved for reconsideration of the April 16th Order, which was denied in an Order dated September 9, 2010.  *See* **Exhibit 5**. That Order stated that  BSI failed to establish grounds for reconsideration and clarified language in the prior Order of April 16th:

> To the extent that there is any confusion, emails sent by Defendant include any emails that the Defendant initiated in the transmission of, conspired with another to initiate the transmission of, or assisted in the transmission of.
> \***
> Plaintiff fails to establish any of the three grounds accepted by the District of Maryland as justifications for reconsideration of an interlocutory order.

5

    **4.**    <u>**The September 23, 2010 Order**</u>.

BSI also tried again with another non-party to go beyond the 41 domain names that BSI itself had identified as being associated with the E-Mails At Issue.  That attempt was denied on September 23, 2010 in a paperless Order as the Court reaffirmed and adopted the same rationale as in its April 16, 2010, June 23, 2010, and September 9, 2010 Orders (*see* **Exhibit 6**):

> MOTION to Quash *Plaintiff, BSI's Subpoena Issued to Non-Party Enom Incorporated* filed by World Avenue USA, LLC - "GRANTED" to the same extent that the Court Granted [217][2]

    **5.**    <u>**The June 2, 2010 Order**</u>.

The Court also established limits on BSI's attempts to define the word "You" in its discovery to include a myriad of other entities in a June 2, 2010 Order (*see* **Exhibit 7**):

> The Court finds the Local Rules of the Court instructive on this issue.  The Court requires Defendant to provide responsive information in the hands of its officers, directors, employees, agents, representatives and attorneys.  See Appendix D, Standard Interrogatories, Local Rules of the United States District Court for the District of Maryland.

    **6.**    <u>**The September 23, 2010 Ruling**</u>.

At a September 23, 2010 hearing held the same day that BSI issued its Subpoena, the Magistrate Judge confined BSI to the 70,000 E-Mails At Issue and ruled that BSI had to file a Motion with the District Court if it wanted to add to the 70,000 E-Mails At Issue:

> THE COURT: Well, let me make this easy for you. To the extent that you've got new incoming domain name names and other e-mails coming in that you think are attributable to the defense, fine. Do what you have been doing. ***But as to the litigation thus far, the cap is now at the 70,000 that we've been talking about for the last couple of years***. ***To the extent that you believe you've got some others***

---

[2] Docket Entry 217 is the Motion relating to the other non-party DNS Made Easy.

***that are attributable to the defense, file a motion. Judge Messitte or someone will rule upon that motion as to whether or not you get to explore those additional issues, those additional facts, and have an additional year or two***, whatever is necessary to complete the discovery trail that you all have been engaged in for some time.

*See* Excerpted Transcript of September 23, 2010 hearing, attached as **Exhibit 8**.

BSI did not file the Motion before the District Court that the Magistrate Judge asked for to see if BSI would "get to explore those additional issues, those additional facts." Instead, BSI ignored the Magistrate Judge's ruling and ***that very day*** issued the abusive Subpoena seeking to go far beyond the 70,000 E-Mails At Issue. To ensure that it got what it wanted, BSI not only defined TheUseful broadly so that its Subpoena would also require the production of documents from WAUSA and Holdings, but also went far beyond the "cap" of the 70,000 E-Mails At Issue. A more deliberate flouting of an unambiguous Court ruling could scarcely be imagined.[3]

**C.      The Subpoena.**

On the very day that the fourth Court Order was entered (September 23, 2010), and in a blatant effort to circumvent the four Court Orders in Maryland (*see* Exhibits 3, 4, 5, and 6), BSI served the overbroad and oppressive Subpoena to TheUseful. *See* Exhibit 1 (containing September 23, 2010 transmittal letter from BSI). BSI's Subpoena was served by electronic mail on September 23, 2010[4] and by Certified Mail on September 28, 2010 and demanded that

---

[3] WAUSA will be pursuing separate remedies for this conduct in the Maryland Action.

[4] The Subpoena was served by e-mail and by certified mail and without tendering of fees, which is invalid. *U.S. v. Sandoval*, Case No. 10-20243-CR, 2010 WL 2757188, at *1, *2-*3 (S.D. Fla. July 13, 2010) (Altonaga, J.) (holding that under Federal Rule of Criminal Procedure 17(d), which is "substantially the same" as Federal Rule of Civil Procedure 45(c), "Sandoval's service of the subpoena *duces tecum* by facsimile was defective and the subpoena must be quashed in its entirety on this ground"); *Johnson v. PetSmart, Inc.*, Case No. 6:06-cv-1716-ORL-31UAM, 2007 WL 28852363, at *1, *2 (M.D. Fla. 2007) (service of a subpoena by facsimile does not satisfy Rule 45's

7

TheUseful produce its 30(b)(6) corporate representative for deposition on October 26, 2010.

The Court should grant the requested protection because the Subpoena is overly broad, unduly burdensome and harassing.  In its Subpoena, BSI defines World Avenue Companies as:

> World Avenue USA, LLC, any entity trading as World Avenue, any entity trading as TheUseful, any entity trading as Bravatas, LLC, or Bravatas LLC, TheUseful, LLC, World Avenue Holdings, LLC, Niupercent, Inc., Net Radiance, LLC, World Avenue Management, Inc., World Avenue IP, LLC, World Avenue, LLC, Apercent, LLC, Jinius Corporation, Intrepid Investments, LLC, Q Interactive, Inc., Vente Inc., Bristol Interactive, LLC, any entity trading as Kitara Media, World Avenue (Bermuda) Limited Corp., Infrastructure International Limited Corp., World Avenue Services, LLC, Gift Reward Center, LLC, Magnacent, LLC, Warwick Interactive, LLC, Q Holdings Inc., Magdalen Holdings, Inc., Right Mail Marketing, LLC, Vente Holdings, LLC, Postmaster Direct, ThruChannel, LLC, Niutech, LLC, Ji Holdings, LLC, any entity trading as LAD Express, and any entity trading as IAD Express.

While the Amended Complaint only names WAUSA, Niuniu Ji, and Holdings, the Subpoena requests that TheUseful produce its representative with the most knowledge on ***thirty-five other*** entities. This requirement and the definition above contravene yet another ruling in this case prohibiting BSI from defining one company to include all other companies to which it may have any conceivable relationship.  *See* Exhibit 7.

Accordingly, BSI's Subpoena not only requests that TheUseful produce for deposition its corporate representative with the "most knowledge" on 50 topics pertaining to 33 entities that are non-parties to the Maryland Action, but it also includes document requests are not specified with

---

requirement that the subpoena be "delivered" to the subpoenaed person"); *Klockner Namasco Holdings Corp. v. Daily Access.com, Inc.*, 222 F.R.D. 685, 687 (N.D. Ga. 2002) ("authority in this circuit suggests that personal service on the witness being subpoenaed is required"); *Atizol v. American Express Travel Related Services Company, Inc.*, Case No. 08-60262-CIV, 2008 WL 5070275, at *1, *2 (S.D. Fla. 2008) ("Service by mail is generally insufficient under Florida law…Thus, Plaintiff's attempt to effect service on the Individual Defendants via certified mail is not in compliance with Florida law or Federal Rule of Civil Procedure 4(e)"); *In re: Food Supplement Co., Inc.*, 33 B.R. 188, 189 (Bankr. S.D. Fla. 1983).

reasonable particularity. Further, the Subpoena, on its face, requests that TheUseful -- a non-party to the Maryland Action -- produce documents that BSI has allegedly requested from *any* party and/or non-party in the Maryland Action, but not yet received. On its face, the Subpoena clearly imposes an undue burden on TheUseful, and should be quashed.

### III.   <u>SUMMARY OF ARGUMENT</u>

The Court should quash the Subpoena as an attempt to circumvent multiple clear discovery limits repeatedly imposed in the Maryland Action in at least five separate Court Orders and one Court ruling.  Moreover, this Court should quash the facially overbroad Subpoena for requesting that TheUseful produce for deposition its corporate representative with the "most knowledge" on matters involving up to 35 entities that are non-parties to the Maryland Action on 50 topics as detailed in 32 definitions.  Moreover, the Subpoena's document requests are not reasonably particular by requesting that TheUseful produce documents that "relate to" 50 subjects and 34 other entities. The Court should also quash the Subpoena for improper service of process.  Accordingly, the Court should quash the Subpoena and enter a Protective Order.

### IV.   <u>ARGUMENT</u>

**A**.   **The Subpoena Should Be Quashed As An Invalid Attempt To Circumvent <u>Discovery Restrictions Imposed in the Maryland Action</u>**.

A "Rule 45 subpoena is a discovery device that may not be used to circumvent other civil rules or court orders." *Caston v. Hoaglin*, Civil Action No. 2:08-CV-200, 2009 WL 1687927, at *1 (S.D. Ohio 2009).  Here, BSI attempted to circumvent at least four Court Orders and one ruling in the Maryland Action that limited it to the issues in the E-Mails At Issue, namely, the 41 domain names that BSI itself averred were in the E-Mails At Issue.  BSI not only went beyond

9

the 41 domain names, but also went beyond the E-Mails At Issue.  BSI's Subpoena seeks documents on **any** e-mail sent by TheUseful since 2004, not just those at issue in the Maryland Action and not just those that are allegedly sent to BSI.  *See* Exhibit 1, p. 3 ("EMAILS CLAIMED means the COMMERCIAL EMAIL messages that were part of any campaign **promoting YOUR business**, sent to Plaintiff **or** received by Plaintiff") (emphasis added).  That too has been forbidden in a prior Maryland Action ruling and an Order.  *See* Exhibits 7-8.  Such a clear end-run around more than five unambiguous Court Orders and one clear Court ruling should not be permitted.

### B.     The Subpoena Improperly Requires TheUseful's Corporate Representatives To <u>Be Prepared On Fifty Overbroad Topics and Thirty-Two Definitions</u>.

#### 1.     The Court's Power To Quash The Subpoena.

While Federal Rule of Civil Procedure 45 allows a party to "issue a subpoena to compel a non-party to produce evidence independent of any deposition," paragraph (c)(3) of the Rule also "explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power."  Fed. R. Civ. P. 45(a)(1) Advisory Committee's Note 1991 Amendment. The district court has "wide discretion" in deciding a motion to quash subpoenas and its decision is reviewable only for abuse of that discretion.  *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1997 (11th Cir. 1991) (affirming granting of motion to quash subpoena).

#### 2.     The Court's Power To Issue A Protective Order.

Federal Rules of Civil Procedure 26(c) and 45(c)(3) act in conjunction with each other to provide the grounds upon which a subpoena should be quashed.  The Court has the discretion, for good cause, to issue an order to protect a party from "annoyance, embarrassment, oppression,

10

or undue burden or expenses, including … (A) forbidding the disclosure or discovery." *See* Fed. R. Civ. P. 26(c). If the threshold for good cause is made, the Court has broad discretion to fashion an appropriate order and should deny the request only if the opposing party can show that the protective order will substantially prejudice them. *M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992).

### 3.     The Court's Powers Concerning A 30(b)(6) Deposition.

A 30(b)(6) notice containing numerous categories seeking irrelevant, overbroad, and duplicative information can be limited by the court. *E.E.O.C. v. Vail Corp.*, 2008 WL 5104811, at *1 (D. Colo. 2008) (granting protective order on 30 topics in notice where many of the remaining topics were "unnecessarily duplicative, burdensome or otherwise inappropriate"); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581 (D. Kan. 2008) (granting protective order where notice was overly broad in temporal and geographic scope and party seeking discovery failed to meet burden to show relevance); *Krasney v. Nationwide Mut. Ins. Co.*, 2007 WL 4365677, at *1 (D. Conn. 2007) (granting protective order on overbroad notice that contained "amorphous" categories); *Jordan v. Equifax Info. Svcs.*, 2005 WL 327066, at *1 (N.D. Ga. 2005) (limiting notice to exclude those topics that are oppressive, burdensome, and unnecessary); *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible"); *Lipari v. U.S. Bancorp., N.A.*, 2008 WL 4642618, at *1, *6 (D. Kan. 2008) (granting protective

11

order where topics were overbroad and not described with reasonable particularity and covered "Plaintiff's Petition", "all documents…related to the conduct of its agents").

> **4.    The Court Should Quash The Subpoena And Issue A Protective Order Due To The Abusive Nature of The 50 Topics**
>
> > **a.    The Scope of the 35 Entities, 50 Topics, and The World Avenue Companies Renders The Subpoena Abusive.**

Here, the oppressive scope of the Subpoena is apparent on its face.  *First*, the Subpoena requests that TheUseful produce its corporate representative with the most knowledge on not only TheUseful's business dealings, but on the business dealings and 49 other topics relating to 34 other persons and entities. The objectionable language on "World Avenue Companies" permeates the entire Subpoena and is found in Requests 1-7, 11, 13, 15-17, 22, 25, 27-30, 31-37, 39-43, 46-49.   It is unreasonable and unduly burdensome to anticipate that a corporate representative of TheUseful would have substantial knowledge of the "corporate structures" or "data sharing" of disparate entities who have no involvement in the Maryland Action.

> > **b.    BSI's Definitions Render The Subpoena Grossly Overbroad And Are Violative Of A Fifth Specific Court Order.**

*Second*, BSI does not stop at an objectionable definition of the "World Avenue Companies" as including 35 entities of which TheUseful's corporate representative is expected to have knowledge.  Instead, BSI offers an expanded definition of "You" or "Your" for purposes of expanding it to all "AGENTS, ASSOCIATED ENTITIES, AFFILIATES, predecessors, successors, assignees, and subsidiaries, among other things.   In turn, the word "Agents" is defined as "a PERSON or entity who performs any act for the benefit of another and is subject to the other's direction or control."   *See* Exhibit 1, p. 2, ¶2.   The words "Associated Entity,"

12

"Affiliate" are similarly overbroad.  *See id.*, p. 2, ¶ 1, 3.  These offending definitions are found in topics 1, 3-7, 9-11, 13, 15-17, 22-23, 25, and 27.  *See* Exhibit 1.  The Subpoena includes definitions that attempt to circumvent the restrictions in the Court's Order of June 2, 2010.  *See* Exhibit 7. Thus, the Court should quash the Subpoena.

### c.   BSI's Attempt To Extend The Issues In The Maryland Case Beyond The E-Mails At Issue Violates A Specific Court Ruling

*Third,* although the Maryland Action involves the E-Mails At Issue which were allegedly sent by WAUSA and Holdings to BSI in Maryland, BSI's Subpoena is not confined to the E-Mails At Issue.  Instead, BSI uses the term "Email Claimed", which is:

> The COMMERCIAL EMAIL messages that were part of any campaign *promoting YOUR business*, sent to Plaintiff *or* received by Plaintiff.  EMAILS CLAIMED includes emails from *YOU*, from any of *your AFFILIATED ENTITIES*, from *YOUR contractors, sub-contractors, advertisers, AGENTS, ad networks, AFFILIATES, publishers, and/or vendors, and from anyone promoting YOUR business*, since *July 30, 2004*, up to the present day, and continuing up to and including the date of the entry of any final, non-appealable judgment.

*See* Exhibit 1, p. 3-4, ¶ 10.  The Court limited this type of discovery on September 23rd -- the very date that BSI issued its Subpoena that flouted and violated that ruling.  *See* Exhibit 8.

### d.   BSI's Attempt To Go Beyond E-Mails Is Grossly Overbroad.

*Fourth*, although this case involves the E-Mails At Issue sent to BSI, BSI's Subpoena goes far beyond e-mail and extends to any "Internet Advertising," "Promotional Campaign," "Lead Generation Campaign," "Commercial E-Mail," and "Products," regardless of whether (i) they relate to the E-Mails at issue in the Maryland Action; (ii) the two Defendants in the Maryland Action sent them; or (iii) BSI ever even saw the "Internet Advertising," "Promotional

13

Campaign," "Lead Generation Campaign," "Commercial E-Mail," or "Products." *See* Exhibit 1. Each of these definitions is similarly overbroad. *See* Exhibit 1, p. 4, ¶ 15; p. 5, ¶22; p. 4, ¶ 15; p. 5, ¶ 21; p. 2, ¶ 5. These objectionable terms are included in Subject Matters 6-12, 14-21, 23, 25-33, 37, 39, 41-43, 46-47.

          **e.**       **The Overbreadth of The Topics Renders It Impossible To Prepare A 30(b)(6) Witness.**

Other topics are simply impossible to prepare a witness to meet. For example, topic 48 is "All information contained in any documents YOU or WORLD AVENUE COMPANIES have received from anyone in discovery in this suit, including documents received via subpoena." See Exhibit 1, p. 15. Topic 49, requires knowledge of "Participation by YOU and by any WORLD AVENUE COMPANY in any of the conduct, actions, events and transactions described in each of the preceding [48] paragraphs." *Id.* Topic 50 is "[t]he subjects of all discovery requests and subpoenas propounded by Plaintiff to any party or non-party in this case". *Id.* Topic 24 is "[i]dentification of all PERSONS who may have knowledge of the subject matters described in [the 50 topics of] this list." *Id.*, p. 11. Having to prepare a witness to respond to questions about these topics would pose an impossible task which alone merits a protective order.

     **C.**     **BSI Has Attempted To Hijack This Court's Subpoena Power To Try to Churn Up New Claims Against Non-Parties To The Maryland Action.**

          **1.**       **The Subpoenas Must Seek Relevant Information.**

BSI's Subpoena, which seeks information about other disparate entities and topics, is facially irrelevant to the Maryland Action in which only WAUSA, Holdings, and Ji are the named Defendants. As a preliminary matter, the information requested in the Subpoena must fall

14

within the permissible scope of discovery in general. *See, e.g.* Fed. R. Civ. P. 45(d) Advisory Committee's Note 1970 Amendment (stating that "the scope of discovery through a subpoena is the same as that applicable to . . . the other discovery rules"). This means that the documents requested in the Subpoena must be "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). Should a subpoena fail to meet this requirement, it must be quashed. *See* 9A Miller & Wright, Federal Practice and Procedure, § 2459 (2005) (recognizing that "a subpoena may be quashed if it calls for clearly irrelevant matter"); *see also Thompson v. Glenmede Trust Co.*, No. Civ. A. 92-5233, 1995 WL 752422 (E.D. Pa. 1995) (quashing a subpoena served on a non-party because the discovery sought was irrelevant to the underlying action). Discovery simply may not be had regarding a matter that is "not relevant to the subject matter in the pending action." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990). The burden of demonstrating relevance rests with BSI, as the party seeking discovery from TheUseful. *Echostar Communications Corp. v. The New Corporation, Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

### 2.   Rule 45 Subpoenas Cannot Be Abused As A "Fishing Expedition.

Federal Rule of Civil Procedure 26(b) governs the scope of discovery, and states "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Advisory Committee's notes to the 2000 amendment of Rule 26 make clear that discovery must focus on "the ***actual claims and defenses*** involved in the action" and that parties have "***no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings***." *See* Rule 26, Advisory Committee Notes, 2000

15

Amendment (emphasis added); *Johns Hopkins University v. Datascope Corp.*, 2007 WL 1450367, at *1 (D. Md. 2007) (denying the plaintiff's motion to compel given its failure to demonstrate that the requests fall within the scope of discovery under Rule 26) (emphasis added); *see also Behler v. Hanlon,* 199 F.R.D. 553 (D. Md. 2001) (noting that "the revised scope of discovery adopted on December 1, 2000, the scope of discovery *was narrowed* to cover facts that are not privileged that are relevant to the claims and defenses raised in the pleadings"); *AG-Innovations, Inc. v. U.*S., 82 Fed. Cl. 69 (Fed. Cl. 2008) (opining that "[u]nder the current standard, courts are advised to focus upon *the specific claims or defenses*  when determining the scope of discovery") (emphasis added).

### 3.    The Subjects Are Tailored Solely To Develop New Claims

The Subpoena is not limited to the specific claims and defenses pending before the Court. The vast majority of the Subpoena's listed subject matters reference 33 entities and persons that are not named defendants in BSI's Amended Complaint -- the operative pleading on the date of service of the Subpoena. BSI's discovery aimed at these non-parties is plainly improper under Rule 30(b)(6).  *See e.g., Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647, at *1, *6 (S.D. Fla. 2007); *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000) ("Plaintiff has not carried his burden of showing the relevancy, in an insurance contract action, of his discovery request seeking information *on other companies affiliated with defendant or other group health insurance plans issued by these affiliated companies*") (emphasis added); *McCann v. Bay Ship Management, Inc.*, No. Civ-A-00-1430, 2000 WL 1838714, at *1, *1 (E.D. La. 2000) (rejecting discovery request where it did not relate to a claim or defense and no showing of good cause was

16

made); *McBride*, 250 F.R.D. at 584 (denying companywide inquiry on 30(b)(6) notice involving disparate facilities).  To date, BSI has made no showing justifying its voluminous discovery requests on the 33 other entities. As such, the Subpoena is not "reasonably calculated to lead to the discovery of admissible evidence", and should be quashed.

**D.**     **The Subpoena's Document Requests Are Not Reasonably Particular.**

Further, Document Requests 1 and 2 in the Subpoena are not reasonably particular regarding the documents to be produced.  *See* **Exhibit 9** (Objections to Document Requests). Document Requests 1 and 2 in the Subpoena state as follows:

>  1.     All documents that ***relate to*** the [50] subject matters listed above.
>  2.     All documents that ***relate to*** participation by YOU or WORLD AVENUE COMPANIES in any of the conduct, actions, events and transactions described in each of the [50] subject matters described above.

Effectively, BSI has propounded 100 discovery requests by tying Requests 1 and 2 to the 50 subject matters.  BSI also ignores that discovery requests employing omnibus terms such as "relate to," *when applied in a context of an overbroad discovery request*, are objectionable. *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618 (D. Kan. 2008); *see also In re Urethane Antitrust Litigation*, 2008 WL 110896, at *1 (D. Kan. 2008) (holding that a discovery request is overly broad and unduly burdensome on its face if it uses terms such as "relating to" as "such broad language make[s] arduous the task of deciding which of numerous documents may conceivably fall within its scope"); *Robbins v. Camden City Bd. of Education*, 105 F.R.D. 49 (D.N.J. 1985) (holding that a document request for all documents that refer or relate to the plaintiff was too broad as "a copy of every document in [the defendant's] possession could conceivably refer or relate to the plaintiff"); *Parsons v. Jefferson-Pilot Corp.,* 141 F.R.D. 408

17

(M.D.N.C. 1992) (noting that "broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous").

As explained by a federal court in *Audiotext Communications v. U.S. Telecom, Inc.*, 1995 WL 18759 (D. Kan. 1995):

> Requests should be reasonably specific, allowing the respondent to readily identify what is wanted. Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or ***move through mental gymnastics which are unreasonably time-consuming and burdensome*** to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request. The court does not find that reasonable discovery contemplates that kind of wasteful effort.

(emphasis added).  *Accord*, *Parrot, Inc. v. Nicestuff Distributing Intern., Inc.*, 2009 WL 197979, at *1 (S.D. Fla. 2009) (subpoena was overly broad where it sought "all documents ***relating*** thereto") (emphasis added).

Here, Document Requests 1 and 2 are overly broad and unduly burdensome for requesting  TheUseful to produce documents that "relate to" numerous subject matters. TheUseful cannot reasonably determine whether a document "relates to" a particular subject matter.  In addition, Document Request No. 3 requests that TheUseful produce:

> 3.     All documents previously requested in document requests from Plaintiff that have not yet been produced.

In short, Document Request No. 3 asks TheUseful to produce documents that BSI previously requested, but did not receive, from any party and/or non-party in the Maryland Action to which TheUseful is not a party.  BSI does not attach those document requests to its Subpoena, and with good reason -- BSI has served over 200 discovery requests in the Maryland

18

Action.  BSI expects TheUseful to comply with all 200 discovery requests, regardless of outstanding objections not yet ruled upon by the Court,  and has not even bothered to serve them with the Subpoena nor disclosed them to this Court.

      E.     **The Subpoena Is Unduly Burdensome and Oppressive**.

A subpoena must also be quashed where it "subjects a person to an undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  On a motion to quash under Federal Rule 45(c)(3)(A), the court may evaluate the "undue burden" of the subpoena based on "'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *In re: Nova Biomedical Corp. v. I-Stat Corp.*, 182 F.R.D. 419, 422-24 (S.D.N.Y. 1998) (*quoting Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)).  Where, as here, a non-party is involved, the court should impose broader restrictions on the scope of discovery.  *The Barnes Foundation v. The Township of Lower Merion*, Case No. 96-CV-372, 1996 WL 862451, at *1, *2 (E.D. Pa. 1996); *In re: Nova Biomedical*, 182 F.R.D. at 423.

Rule 45 states as follows at Paragraph (c)(1):

> **Avoiding Undue Burden or Expense; Sanctions**.  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and may impose an appropriate sanction - which may include lost earnings and reasonable attorney's fees -- on a party or attorney who fails to comply.

BSI has failed to comply with this duty and instead has served an abusive, unduly burdensome Subpoena for which BSI should be sanctioned by this Court under Rule 45(c)(1).

19

**WHEREFORE,** THEUSEFUL, LLC respectfully requests the entry of an Order quashing the Subpoena and a protective order, either precluding the deposition or referring the parties to the Maryland Court to establish the permissible scope of the deposition, together with an award of sanctions under Rule 45(c)(1), and for such other and further relief that this Court deems just and proper.

Dated:  October 7, 2010.

Respectfully submitted,

*Attorneys for TheUseful, LLC*

GREENBERG TRAURIG, P.A.

   /s John L. McManus
Kenneth A. Horky, Esq.

Florida Bar No. 691194
horkyk@gtlaw.com
John L. McManus, Esq.
Florida Bar No. 0119423
mcmanusj@gtlaw.com
GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone: 954-765-0500
Facsimile:  954-765-1477

Of Counsel:
Sanford M. Saunders, Jr., Esq.
USDC, MD #4734
saunderss@gtlaw.com
Nicoleta Burlacu, Esq.
BurlacuN@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202-331-3100
Facsimile:  202-331-3101

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so or has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, but has been unable to do so. Specifically, counsel for the movant, Sanford M. Saunders, Jr., has spoken by telephone on several occasions with counsel for BSI, Stephen H. Ring, as well as by electronic mail explaining the position that the subpoena is overbroad, but the parties have been unable to resolve the matter.

/s John L. McManus_____

21